The first case on the calendar is Cabello-Rondon v. Dow Jones Company. Thank you. You can take the podium. Good morning. Good morning, your honor. Good morning, your honors. And this is Xin Jian Zhao, here for the appellant, Dio Stato Cabello. And I've already reserved time for rebuttal. The district court aired here for two reasons. Despite acknowledging in its order on page 38 of the appellant's appendix that read liberally, Mr. Cabello has pled, and I'll quote from the order, that, quote, Dow Jones was at the very least reckless as to truth, as evidenced by its willingness to rely exclusively on anonymous sources as to claims against Cabello, its failure to adequately vet and investigate those sources, and its willingness to surreptitiously rely on the reporting of other publications without disclosing the original source. The court further noted that Mr. Cabello has pled when read liberally that Dow Jones actually knew the article's statements were false because the author's and falsely attributed them to unnamed government sources. That's totally conclusory, right? The court noted, the court concluded, I mean, this is the court's, the district court's conclusion of what Mr. Cabello has pled when read liberally, which is the standard applicable on the motion to dismiss. The district court further erred by depriving Mr. Cabello of an opportunity, as he should have had, to amend his pleading and to conform to the new doctrine. He amended once, didn't he? He did amend twice. This is the second amended complaint, Your Honor. Yes, okay, go on. To conform to the new doctrine from this court in Tanner Wright Sports. Counsel, you concede, of course, that Mr. Cabello is a public figure, right? You don't contest that. We're not contesting the fact that Mr. Cabello is a public figure. And so therefore, he has to plead actual malice. Yes, Your Honor. And tell me how you did that. We pled actual malice based on what was before us, and there was, frankly, very little before us at this stage of the proceedings other than the article itself. There is at least circumstantial evidence based on the governing plausibility standard to give an inference of actual malice based on what we have. The article itself was entirely, as Judge Forrest pointed out, was entirely reliant on anonymous sources in its reporting. At least- Is that a basis to infer malice? That is a factor that the court could use to give an inference of malice, or at least a plausible inference of malice, that by itself may not arrive at that conclusion, Your Honor. As well as the fact that there are certain internal inconsistencies within the article that may not be dispositive, again, by itself. But it does give an inference that there may not have been adequate vetting involved. So that is a very short way of concluding our allegations as to actual malice. Returning to the point regarding amendments, Tanner Wright was decided almost a year after the complaint was filed, and six months after briefing closed on the motion to dismiss. This court has held, and actually this court and other circuits have long held, that plaintiffs should be permitted to amend based on new doctrine. And one example of that was in the absolute act of this case in wake of Morrison versus National Australia Bank, where this court permitted parties to amend. In fact, reversed dismissals of motions to dismiss with instructions to give leave to amend based on new doctrine. And what's the basis that you seek to amend, since you've had two chances to state the facts? Your Honor, two bases, two main bases. First, the fact that when the complaint was, in fact, the second amendment complaint was pled, we did not have the benefit of reference to the new standard that this court reached in Tanner Wright, at least as to the falsity allegations. And as well, just the general doctrine that says that amendments should be liberally given unless it is futile or prejudicial. And here, in fact, the amendments would actually have not been futile. As my esteemed colleague noted in her own brief that there, in fact, was a very straightforward way to amend based on the Tanner Wright doctrine, at least in their view. So, it is clearly not futile. And there's no evidence whatsoever to show that an amendment would be prejudicial at this stage. But that amendment would address the falsity of the allegation. It wouldn't have any effect on the pleading of malice. You still would have an obligation, plausibly, to plead malice, correct? Yes, Your Honor. Reaching the point of actual malice, the district court erred by essentially substituting its own view of what may be plausible and possibly conflating probability with plausibility, which this court, the US Supreme Court, and other circuits are uniform in saying is prohibited on a motion to dismiss stage. To give just one example, the district court noted in its opinion, in the part concerning actual malice, that nothing indicates that the sources were unknown or unverified by the journalist, that just because the source is unknown to the reader, to the subject, doesn't mean that it's unknown to the reporter. And there are two problems with that. There's no response of pleading in this case. There was a motion to dismiss. And the district court, in stating, in sort of raising or inventing another, an alternative view, has essentially pled on behalf of the defendant below and the appellee here. That's what they would have said if they had answered. Correct, Your Honor. All these sources. And it was inappropriate for the court to do that on their behalf. Yes, Your Honor. That's your argument. Yes, Your Honor, that is. And with this, I will reserve the remainder of my time. Yes, you have. Thank you, counsel. Thank you. We'll hear from Dow Jones. Morning. May it please the court, I'm Catherine Bolger on behalf of Dow Jones. I want to start off actually talking about the article that's at issue in this whole dispute, because the article gives some context to the plaintiff's allegations. So the article's in the appendix. It's the very first page of the appendix, and the article is six pages long. The article talks about US prosecutors' efforts to investigate several high-ranking Venezuelan officials. That's its lead, its first sentence. It talks about the fact that it's mighty hard to prosecute Venezuelan officials because of the poor and deteriorating conditions between our countries, and it discusses the fact that there's an uptick in informants. In that context, it talks about Mr. Cabello. It says he's the second most influential man in Venezuela, and it cites law enforcement sources for the fact that he's the leading and the biggest target of the investigation. It also, by the way, goes out of its way to include Mr. Cabello's commentary. Mr. Cabello declined to respond to Wall Street Journal's request for comment, but the Wall Street Journal quotes Mr. Cabello, not once, but twice. Once, talking about how similar allegations that he was involved in drug trafficking led him to expel 22 people from Venezuela. And then once, specifically addressing allegations by a man named Leonce Salazar, in which he says Salazar doesn't know anything, he's an imposter. Plaintiff filed a complaint based on that article. We wrote a pre-motion letter to the court seeking to dismiss it. The court, the plaintiff asked to amend. We then filed a complete motion to dismiss, making the arguments we're making before you today, and the plaintiff again amended his complaint. So this, as you have correctly pointed out, is the plaintiff's third shot at a complaint. And Judge Forrest was correct to dismiss it. I'm going to start very quickly on the question of falsity, because it would not knock out the whole complaint in actual malice will. So I'll be happy to go quickly through falsity. So since Tannerite, Judge Pooler, thank you, the plaintiff, the law in the Second Circuit is clear that the plaintiff must plead facts that, if proven, would allow a reasonable person to consider the allegedly defamatory statement to be false. Judge Forrest correctly held, and I don't think the plaintiff even contests, that the defamatory gist or sting of this article is that Mr. Cabello is under investigation for drug trafficking and money laundering. The plaintiff hasn't pled that's false. In fact, he's pled it's true. Now, not in his briefs to this court, but if you look at the complaint itself, which is in the appendix, paragraph 25, which is page 12 of the appendix, says that the statement that one or more officials from the DOJ and possibly other federal agencies have deliberately leaked to it information about a classified, ongoing criminal investigation, enough so as to definitively label Mr. Cabello as a leading target of the investigation, or one of the heads, if not the head of the cartel, is material false. In other words, the plaintiff pled what Dow Jones did was misdescribe the investigation, not get it wrong. In the face of what plaintiff actually pled, now claiming that he's pled the material falsity of the defamatory gist or sting, is simply inconsistent with he pled here. Now, the plaintiff cites paragraph 18 of the complaint and says that says he unambiguously pled that the headline was materially false. The headline, which is obviously on the first page of the appendix, says Venezuelan officials suspected of turning country into a global cocaine hub. US probe targets number two official Deistado Cabello, several others, on suspicion of drug traffic and money laundering. But if your honors took a look at paragraph 18, which is 10 of the complaint, it doesn't unambiguously plead anything. It's not totally clear what exactly the plaintiff is saying is false about the headline. And Tannerite nicely articulates that to plead falsity, you are to plead how a statement is false. Well, it just says mishmash that maybe something in that headline is wrong, but it could be that the plaintiff isn't under investigation for drug trafficking, it's money laundering. It could be that it isn't cocaine. It could be pot. It could be something else. What is false about the headline is never really pled. So we think the plaintiffs don't even get over the most basic element, which is that they haven't identified a false statement. But even if you disagreed with me on that, I think it's very clear that the plaintiff hasn't pled actual malice. And even today, the plaintiff again shows the same misunderstanding. The very passage that the plaintiff began his oral argument in Judge Forrest's opinion, which is on page 38 of the appendix, the plaintiff read to you the words of Judge Forrest's opinion. Except he left out the last sentence of the paragraph, which is each of these assertions is implausible and unavailing. That's the very end of the paragraph that the plaintiff just read. And the reason for that is because the bureau case demands that the plaintiff do more than simply use the boilerplate language that signifies to the court that they're trying to make an actual malice argument. They're supposed to plead facts that plausibly support that language, and there are no facts here. The closest the plaintiff gets to pleading a fact to support these boilerplate allegations is his belief that it's highly improbable that a Department of Justice representative would have leaked to the media. Because gosh, that would get them in a lot of trouble. What about the argument made by Mr. Chau that the district court made findings of fact in favor of your client and on a 12B6 motion? There are no- Raising the arguments that they would raise if it went further during inferences. I understand, Your Honor, and I think the answer to that question is she did not draw any inferences. What she pointed to was a failure to plead facts. So for example, I understand that Judge Farah said that the Dow Jones would have said that they know these sources rather than they are unknown. But the standard is not, it's not actual malice to rely on a confidential source. It's actual malice to rely wholly on an unverified confidential source. The plaintiff was obligated to come forward with facts to show a wholly unverified source. Here, can't say we relied wholly on anonymous sources, because remember, Mr. Cabello himself is quoted talking about these allegations. And in addition, there are other people quoted on the record in the story. And as to the unverified aspect of it, well, there's no fact that leads anybody, pled in the complaint that could lead the defendants to have doubted a hypothetical anonymous source. The plaintiff could have pled something like, they relied, or should have pled something like, they relied on sources who were corrupt. They relied on sources that Mr. Cabello knows didn't have this information. They'd have to be more specific. But the point is that the plaintiff was obligated, you can't just say, well, they relied on confidential sources, I've pled malice. You have to plead facts that create the inference that the defendants relied on wholly unverified anonymous sources. That's actually the distinction this court made in bureau. That was the allegation in bureau, was they relied on wholly unverified sources. And the court there said, no, you have to identify those sources. In addition, of course, the sine qua- Heavy burden on a plaintiff to identify sources that are reported anonymously in the article. Well, or they don't necessarily have to identify the source, but they do have to have a reason to disbelieve the source. Or a reason to believe, to say it more carefully, that the defendants purposely avoided truthful information in relying on the source. And I think that's the thing about this that's so significant. The hallmark of actual malice is purposeful avoidance of the truth. Here, there's ample evidence that defendants didn't try in any way to avoid the truth. In fact, they purposefully intended to invoke it. They reached out to the plaintiff. He refused to answer their questions, but they still went out of their way to include his quotations on specific allegations in the article. In addition, of course, at the time the Wall Street Journal article was written, as it says on its face, the Venezuelan article had already been written, and as plaintiff pled, there's an Abese article written in Spanish, and there were several articles written in the New York Times related to this general topic. So it's not just that the plaintiff didn't plead plausible facts. It's that he couldn't at the time this article was published, because there's simply nothing in this that would indicate that there was any plausible, any purposeful avoidance of the truth. Very quickly, on the question of amendment, as you all pointed out, plaintiff has already amended. This is his third complaint. In addition, he didn't seek leave to amend in the court below. And actually, Judge Puller Tannerite even talks about that. In Tannerite, the plaintiff sought to amend, and this court said you didn't ask for it below, and you can't ask for it now. And the other thing is Tannerite is consistent with many, many cases that came before it. It's consistent with the Homan case, it's consistent with the Trout Pond case, it's consistent with a bunch of other cases we cited in our court. It was a great decision, but it didn't change anything. Thank you, Your Honor. Thank you. Counsel, you've reserved three minutes for rebuttal. Your Honor, just very briefly on back to the issue of amendments. Judge Forrest actually foreclosed the plaintiff below, the appellant here, from amending in a standing order, in a standing scheduling order dated October 7th, 2016. This is on page 53 of the appendix on docket entry 29, which is just in the docket, it says there shall not be further amendments to the complaint thereafter. Thereafter meaning after the second amendment complaint. And this date still predates this court's decision in Tannerite by, I believe, more than half a year. So this is just further evidence of the fact that at the time Mr. Cabello filed his second amendment complaint, he simply did not have the benefit of reference to the new, possibly stricter doctrinal standard that was in place, that this court announced that you announced, Judge Pooler, in Tannerite. In addition, the fact that, and I think the court made a very good point in the sense that, at the motion to dismiss stage, at the pleading stage, we only have the article itself in front of us. There's been no further discovery of facts at this stage. So with only the article in front of us, and knowing that actual malice is a very high bar to climb, it would be unreasonable to assume that Mr. Cabello would be able to plead in terms of the depth and substance that my colleague has asserted here. Moreover, the appellee has noted that not everything in the article is based on anonymous and unverified sources. However, if you take a careful look at the article, everything concerning the accusations at issue as to Mr. Cabello were actually unattributed. Meaning that it simply says based on a source or based on someone that is not simply not named. And again, for the district court to assume that there are names and faces behind these anonymous sources is, in fact, an impermissible way of pleading on the defendant's behalf. So, moreover, I think my colleague mentioned that the article mentioned the resulting expulsion of people as a result of accusations. But I don't believe that. That's simply not in the article, I believe. That may be a misunderstanding. Thank you, your honors. Thank you. I have no further questions. Judge Winter, any questions? No. Thank you. Thank you. We'll reserve decision. The next matter on our calendar is.